**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

MARY ANN RANDALL,

      Plaintiff,

vs.                                              CV No. 1:13-398 CG/LAM

STATE OF NEW MEXICO and
NEW MEXICO PUBLIC DEFENDER,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** is before the Court on *Defendants' Motion for Summary Judgment on Plaintiff's Complaint of Retaliation Under Title VII*, (Doc. 58), filed May 28, 2014, and *Defendants' Motion for Summary Judgment on Plaintiff's Complaint Under the New Mexico Whistleblower Protection Act*, (Doc. 59), filed May 28, 2014, (together the "Motion"); *Plaintiff's Response In Opposition to Defendants' Motion for Summary Judgment*, (Doc. 65), filed July 7, 2014, and *Plaintiff's Response In Opposition to Defendants' Motion for Summary Judgment for Whistleblower Protection Act*, (Doc. 66), filed July 7, 2014, (together the "Response"); and *Defendants' Amended Reply in Support of the Motion for Summary Judgment on Plaintiff's Complaint of Retaliation Under Title VII*, (Doc. 72), filed July 23, 2014, and *Defendants' Amended Reply In Support of the Motion for Summary Judgment on Plaintiff's Complaint Under the New Mexico Whistleblower Protection Act*, (Doc. 73), filed July 23, 2014, (together the "Reply"). Pursuant to 28 U.S.C. § 636 and FED. R. CIV. P. 73, the parties have consented to have this Court serve as the presiding judge and conduct all proceedings, including trial. (Doc. 39). After carefully considering the submissions of the parties, the

record, and the relevant law, the Court will grant Defendants' Motions for Summary
Judgment.

**I.      Background and Procedural History**

Since November 2008, Plaintiff Mary Ann Randall was a Client Service Agent
("CSA") at the Aztec office of the New Mexico Public Defenders Department. (Doc. 58-2
at 1:2). In connection with her duties as a CSA, Plaintiff regularly drove a state vehicle.
(Doc. 58-2 at 2:7-9).

Starting in March 2011, Plaintiff and her direct supervisor, Susan Crook, had
several confrontations, which continued through late Fall 2011. (Doc. 58-2 at 2-3:14-20;
Doc. 58-5; Doc. 65-1 at 6-7; Doc. 65-2 at 2:8; Doc. 65-3 at 1-2). The exact nature of
these confrontations is in dispute; however, Plaintiff was served with a formal letter of
reprimand for insubordination on November 17, 2011. (Doc. 58-6). Around this time,
Plaintiff reported a co-worker for stealing client funds.  (Doc. 66-1 at 3-4; Doc. 59 at 2).
She made the report to the Deputy District Defender, Christian Hatfield. (Doc. 66-1 at 3-
4; Doc. 59 at 2). Plaintiff also disclosed to the New Mexico Public Defender, Jacqueline
Cooper, rumors that Mr. Hatfield and the co-worker who had been stealing funds were
having an affair. (Doc. 66-1 at 5; Doc. 59 at 2).

On November 28, 2011, Plaintiff filed a charge of discrimination with the Equal
Employment Opportunity Commission ("EEOC"), alleging that she had been subject to a
hostile work environment, harassment, and disparate treatment on account of her
national origin and her age. (Doc. 58-7). The EEOC complaint was received in the Aztec
office on December 19, 2011. (Doc. 58-13).

On December 29, 2011, a disciplinary meeting was held to address Plaintiff's reprimand for insubordination. (Doc. 58-14). John Stapleton, Director of Human Resources, Mr. Hatfield, Ms. Crook, and Plaintiff attended the meeting. (*Id.*). During the meeting, Mr. Stapleton informed Plaintiff that office records indicated that she had requested reimbursement for mileage incurred on her personal vehicle while traveling for work. (*Id*). Defendants told her they believed she had actually used a state vehicle for the travel, in contravention of Department policy, and that disciplinary action may follow. (*Id*). Before the meeting, emails had been circulating regarding Plaintiff's travel logs and reimbursement requests. (Doc. 58-16). Brenda Salazar, the Department's Chief Financial Officer, indicated in an email to Mr. Stapleton and Ms. Cooper that records showed Plaintiff had submitted travel reimbursement requests for the same date and at the same time she used a state vehicle. (Doc. 58-16 at 1). Ms. Cooper responded to the email, stating that Plaintiff should be terminated. (*Id*; Doc. 72-1 at 3:27-28).

No further action was taken on the matter until March, 2012, when Mr. Hatfield brought the fraud allegations to Ms. Cooper's attention. (Doc. 72-1 at 3:29-30). Ms. Cooper requested the documentation of Plaintiff's alleged fraud and gave the documentation to Mr. Stapleton to review. (Doc. 72-1 at 3:31). She told Mr. Stapleton that if he found the documentation substantiated fraud, he was to initiate termination proceedings by preparing a Notice of Contemplated Action. (Doc. 72-1 at 3:32). Ms. Cooper testified that she had full confidence in Mr. Stapleton's judgment. (Doc. 72-1 at 3:33).

On March 28, 2012, Plaintiff was served with a Notice of Contemplated Action – Termination of Employment. (Doc. 58-18). Plaintiff formally responded on March 30, 2012, denying the fraud allegations and suggesting that the office conflict and the investigation into her travel expenses were connected to her report of the co-worker she alleged was stealing client funds. (Doc. 58-19). On April 9, 2012, Plaintiff received a Notice of Final Action stating that she had been terminated and advising her of her right to appeal. (Doc. 58-21).

Plaintiff filed her *Amended Complaint for Employment Discrimination on the Basis of Age and National Origin/Race and Retaliation,* ("Complaint"), asserting causes of action for age discrimination in violation of the New Mexico Human Rights Act, N.M. STAT. § 28-1-1 *et seq.* (1969) ("NMHRA") (Count I), national origin/race discrimination in violation of the NMHRA and Title VII (Count II), violation of the New Mexico Whistle Blower Protection Act, N.M. STAT. § 10-16C-1 *et seq.* (2010) ("NMWPA") (Count III), and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq* (Count IV). (Doc. 24 at 3-5). Upon Defendants' *Motion to Dismiss*, (Doc. 27), this Court dismissed Counts I (Age Discrimination) and II (National Origin/Race Discrimination) of the Complaint in its *Order Granting in Part and Denying In Part Defendants' Motion to Dismiss.* (Doc. 57). Counts III (violation of NMWPA) and IV (retaliation) remain, and are the subject of this Motion.[1]

## II.   Standard of Review

The court shall grant summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as

---

[1] Because the parties first discuss Count IV (Plaintiff's claim of retaliation) in their motion papers, the Court will begin by addressing Count IV, and then Count III (Plaintiff's claim under the NMWPA).

a matter of law." FED. R. CIV. P. 56(a).  The movant bears the burden of making a *prima facie* demonstration that there is no genuine issue of material fact. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670–71 (10th Cir.1998) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). A fact is material if it might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Id.*   If the moving party has demonstrated an absence of material fact, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587(1986) (internal quotations omitted).

"[W]here the non-moving party will bear the burden of proof at trial on a dispositive issue, that party must go beyond the pleadings and designate specific facts so as to 'make a showing sufficient to establish the existence of an element essential to that party's case' in order to survive summary judgment*."  English v. Colorado Dep't of Corr.*, 248 F.3d 1002, 1007 (10th Cir. 2001) (internal citations and quotations omitted). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmoving party on that issue. *See Anderson,* 477 U.S. at 249.  The nonmovant must go beyond the allegations and denials of her pleadings and provide admissible evidence, which the Court views in the light most favorable to her. *Panis v. Mission Hills Bank, N.A.,* 60 F.3d 1486, 1490 (10th Cir.1995).  The facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein. *See Adler*, 144 F.3d at 671.

III.     **Analysis**

Defendants contend that they are entitled to judgment as a matter of law because Plaintiff has not established a *prima facie* case of retaliation under Title VII. (Doc. 58 at 8). Additionally, Defendants argue they have offered a legitimate, non-retaliatory reason for her termination – that Plaintiff committed fraud. (*Id*). Defendants maintain that Plaintiff has not provided sufficient evidence to create a genuine dispute as to whether the reason for her termination is pretextual. (*Id*). Similarly, Defendants contend that they are entitled to judgment on Plaintiff's claims under the NMWPA because Plaintiff cannot show that Defendants' proffered reason for termination was pretextual. (Doc. 59 at 2).

Plaintiff argues that she can establish a *prima facie* case for both her retaliation claims under Title VII and her claims under the NMWPA. (Doc. 65 at 15-20; Doc. 66 at 5-7). She further alleges that she has stated sufficient facts to create a genuine dispute of material fact as to whether her termination for alleged fraud was pretextual. (Doc. 65 at 17-20; Doc. 66 at 5-7).

A. *Count IV – Retaliation Under Title VII*

Defendants argue that they are entitled to judgment as a matter of law because: (1) Plaintiff did not engage in protected activity under Title VII; (2) Plaintiff cannot establish a causal connection between her EEOC charge and her termination; and (3) Defendants terminated Plaintiff because she committed fraud, and not in retaliation of her filing an EEOC claim. (Doc. 58 at 8).

Plaintiff responds that she engaged in protected activity under Title VII by filing an EEOC charge of discrimination based on age and ethnicity. (Doc. 65 at 15-17). In

addition, Plaintiff contends that she has established a genuine dispute of material fact as to the causal connection between the filing of the EEOC complaint and her termination. (Doc. 65 at 17-19). Finally, she alleges Defendants' termination of Plaintiff for alleged fraud was pretextual. (Doc. 65 at 20).

Under Title VII, it is unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). In analyzing retaliation claims, a court must evaluate whether the plaintiff has set forth sufficient evidence of retaliation using the *McDonnell Douglas* burden-shifting framework.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Vaughn v. Epworth Villa*, 537 F.3d 1147, 1150 (10th Cir. 2008). Under this framework, a plaintiff must establish a *prima facie* case of retaliation. *Vaughn*, 537 F.3d at 1150 (citing *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006)). If the plaintiff has established a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for an adverse employment action. *Metzler*, 464 F.3d at 1170. If the defendant articulates a legitimate, non-retaliatory reason for the employment action, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual. *Id.*

In order to establish a *prima facie* case of retaliation, a plaintiff must show that (1) she engaged in protected activity under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action. *Vaughn*, 537 F.3d at 1150 (citing *Timmerman v. U.S.*

*Bank, N.A.*, 483 F.3d 1106, 1123-24 (10th Cir. 2007)). Here, it is undisputed that Plaintiff suffered an adverse employment action since she was terminated from her position in April, 2012. *See Fischer v. Forestwook Co. Inc.*, 525 F.3d 972, 979 (10th Cir. 2008) ("Proof of either actual or constructive discharge satisfies this requirement.").

    *1.  Plaintiff's Prima Facie Case*

Defendants argue that Plaintiff cannot establish a *prima facie* case of retaliation under the *McDonnell* framework because Plaintiff has not engaged in "protected activity" under Title VII and cannot show that there is a causal connection between the filing of her EEOC complaint and her termination. (Doc. 58 at 8).

Plaintiff responds that she engaged in protected activity under Title VII by filing her EEOC complaint. (Doc. 65 at 15-17). In addition, Plaintiff argues that she has alleged sufficient facts to infer a causal connection between the filing of the EEOC complaint and her termination. (Doc. 65 at 17-19).

    *a.  Protected Activity*

Defendants contend that Plaintiff has not engaged in protected activity under Title VII because she did not have a good faith belief in her underlying discrimination complaint to the EEOC. (Doc. 58 at 9). Defendants argue that in order to engage in protected activity, Plaintiff must have had a good faith, reasonable belief that she was opposing an employment practice made unlawful by Title VII. (Doc. 58 at 10). Defendants maintain that, in her EEOC complaint, Plaintiff alleges insufficient factual allegations of discrimination for a reasonable person to have a good faith belief she was being discriminated against. (Doc. 58 at 11-12).

Plaintiff responds that she engaged in protected activity under Title VII by simply filing her EEOC charge, regardless of whether the underlying charge was unreasonable. (Doc. 65 at 17). Furthermore, Plaintiff maintains that she has shown that she had a reasonable, good faith belief that conduct by the Defendant was discriminatory. (Doc. 65 at 16). To support her claim, Plaintiff points out that she was the only Hispanic, the second oldest, and the second lowest in pay employed at the Aztec Office. (Doc. 65 at 16). She also states that she was harassed and questioned regarding a tequila bottle in a state car, and was present for a comment about minorities having low credit scores. (Doc. 65 at 16-17). Plaintiff maintains that these factual allegations make her underlying discrimination charge objectively reasonable. (Doc. 65 at 17).

"Title VII establishes two categories of protected activity: participation and opposition." *Shinwari v. Raytheon Aircraft Co.*, 215 F.3d 1337, at *4 (10th Cir. 2000) (citing 42 U.S.C. § 2000E-3(a)). Under the participation clause, "an employer may not retaliate against an employee 'because the employee has … *participated in any manner* in an investigation, proceeding, or hearing under' Title VII." *Vaughn v. Epworth Villa*, 537 F.3d 1147, 1151 (10th Cir. 2008) (quoting 42 U.S.C. § 2000E-3(a) (emphasis added)). "The participation clause is designed to ensure that Title VII protections are not undermined by retaliation against employees who use the Title VII process to protect their rights." *Vaughn*, 537 F.3d at 1151 (citing *Brower v. Runyon,* 178 F.3d 1002, 1006 (8th Cir.1999)). As a result, a plaintiff's participation constitutes protected activity "regardless of whether the conduct forming the basis of her underlying complaint is adjudged to violate Title VII." *Shinwari*, 215 F.3d at *4 (internal citations omitted). Indeed, a plaintiff engages in protected activity under Title VII when she files an EEOC

claim. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999) (citing *McCue v. State of Kansas*, 165 F.3d 784, 789 (10th Cir. 1999)).

On the other hand, the opposition clause "provides that an employer may not retaliate against an employee 'because he has opposed any practice made an unlawful employment practice' by Title VII." *Vaughn*, 537 F.3d at 1151 (citing 42 U.S.C. § 2000e-3(a)). The scope of protection for activity under the opposition clause is narrower than the participation clause. *Vaughn*, 537 F.3d at 1151 (internal quotations omitted). This is because "activities under the participation clause are essential to the machinery set up by Title VII." *Id.* (citing *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 n.4 (4th Cir. 1998)). Thus, in order for a plaintiff to have engaged in protected activity under the opposition clause, the opposition must have been based on a reasonable, good faith belief that the underlying conduct violated Title VII. *Crumpacker v. Kan. Dep't of Human Resources*, 338 F.3d 1163, 1171 (10th Cir. 2003).

Here, Defendants' argument that Plaintiff has not engaged in protected activity is misplaced. Plaintiff has alleged that Defendants retaliated against her because she filed an EEOC complaint. (Doc. 65 at 15-17; Doc. 58-7). This activity falls within the participation clause of Title VII, and need not be reasonable to be protected. *See Anderson*, 181 F.3d at 1178. Therefore, Plaintiff has engaged in protected activity under Title VII, and has met the first prong of her *prima facie* case for retaliation.

      *b. Causal Connection*

Defendant argues that Plaintiff has not established a causal connection between her protected activity and the adverse action taken against her. (Doc. 58 at 13). Defendant maintains that Plaintiff has alleged nothing but temporal sequence in

connecting the EEOC complaint and her termination for fraud in April, 2012. (*Id*).

Defendant contends that the initial investigation of Plaintiff's travel records was

prompted by a state-wide review of travel expenses, and that she was ultimately

terminated for committing fraud. (*Id*). Based on these facts, Plaintiff cannot establish a

causal connection between her termination and filing the EEOC charge. (*Id*).

Plaintiff responds that a causal connection can be properly inferred from the

close temporal proximity between her protected activity and her termination. (Doc. 65 at

18). Plaintiff points out that the investigation into her travel logs began just weeks after

filing the complaint. (*Id*). In addition, Plaintiff contends that she was the only employee

being investigated, that the investigation took place shortly after she had reported a co-

worker's misconduct to management, and that she had no issues prior to that report or

the filing of her EEOC complaint. (Doc. 65 at 18-19). Plaintiff argues that the facts

alleged are sufficient to create an inference of a causal connection. (*Id*).

In establishing a causal connection, "a retaliatory motive may be inferred when

an adverse action closely follows protected activity." *Anderson*, 181 F.3d at 1179 (citing

*Chavez v. City of Arvada*, 88 F.3d 861, 866 (10th Cir. 1996)). The Tenth Circuit has held

that while "a one and one-half month period between protected activity and adverse

action may, by itself, establish causation," a "three month period, standing alone, is" not

enough. *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (citing

*Anderson*, 181 F.3d at 1179). Where adverse action does not closely follow a plaintiff's

protected activity, she must rely on additional evidence to establish causation.

*Anderson*, 181 F.3d at 1179 (citing *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390,

1395 (10th Cir. 1997)).

Here, Plaintiff filed her EEOC complaint on November 28, 2011, (Doc. 58-7), and she was terminated on April 9, 2012, (Doc. 58-21), over four months later. Under Tenth Circuit jurisprudence, this four-month period, standing alone, is not enough to establish a causal connection. *See O'Neal*, 237 F.3d at 1253. In her Response, Plaintiff suggests that the relevant time period is between the filing of the EEOC complaint and the initial investigation for fraudulent travel reimbursement claims, rather than her termination.[2] (Doc. 58 at 18). However, generally courts "measure the temporal period as running from the date of the protected activity to the date of the adverse action." *Conroy v. Vilsak*, 707 F.3d 1163, 1182 (10th Cir. 2013). This is because "underlying the law's recognition that a sufficient causal inference may arise from adverse action shortly following protected activity is the notion that such action typically is the product of negative emotions such as anger or resentment." *Id.* (citing *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1217 (10th Cir. 2003)). To focus the inquiry on the temporal proximity between Plaintiff's protected activity and the investigation of her travel logs would run counter to this rationale, as the issue is whether the adverse action itself was retaliatory in nature, not the initial investigation. *Conroy*, 707 F.3d at 1182-82. Plaintiff has not made an argument as to why it is appropriate to depart from this precedent, and the Court is not inclined to do so.

That is not to say that the investigation into Plaintiff's travel reimbursements after she filed her EEOC complaint is not relevant to the causation analysis. In addition to the investigation following her complaint, Plaintiff alleges that she was the only employee

---

[2] Plaintiff does not allege that the investigation itself was the adverse action. (Doc. 65 at 18) ("Plaintiff suffered an adverse employment action of termination…"). She argues, however, that the close temporal proximity between filing the complaint and the investigation would allow this Court to infer a causal connection. (*Id*).

being investigated for fraud, that she had reported a co-worker's misconduct to management, and that she had no major performance issues prior to the investigation to demonstrate causation. (Doc. 65 at 18). However, this Court need not decide whether the facts alleged are sufficient to establish a causal connection between Plaintiff's protected activity and her termination. Even assuming she could establish a *prima facie* case of retaliation, Plaintiff has not created a genuine dispute of material fact as to whether Defendants' proffered reason for terminating her was pretextual.

   *2.  Pretext*

   Defendant argues that as a result of a statewide review of travel expenses in the District Public Defenders offices, Plaintiff's travel logs were investigated and it was discovered that she had submitted fraudulent claims for travel reimbursement. (Doc. 58 at 13; Doc. 72 at 2-3). Based on information that Plaintiff was using a state gas card on the same day and during the same time she requested a travel reimbursement for using her personal car, Plaintiff was terminated on April 9, 2012. (Doc. 72 at 2-3; Doc. 58-21)). Defendant offers this as a legitimate, non-retaliatory reason for terminating Plaintiff. (Doc. 72 at 3).

   Plaintiff responds that her termination for fraud is pretext for discrimination based on retaliation. (Doc. 65 at 18-20). Plaintiff claims that she was the only employee investigated for fraud. Moreover, she argues that she did not commit fraud, and that a review of the travel logs would show as much. (Doc. 65 at 19). Plaintiff claims that she had used a state vehicle for work use in the morning, and later the same day had used her personal car to run errands related to her job duties. (*Id.*). Finally, she argues that

had she actually committed fraud, she would have been fired immediately, rather than in April, 2012. (*Id*).

After a plaintiff has established a *prima facie* case of retaliation, and once the defendant meets its burden by articulating a legitimate, non-retaliatory reason in support of its employment decision, the burden shifts back to the plaintiff to show that the defendant's proffered reasons are pretexual. *McDonnell*, 411 U.S. at 804-05. "A plaintiff may show pretext by demonstrating 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" *Anderson*, 181 F.3d at 1179 (citing *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)). Typically, a plaintiff may make this showing "with evidence that: (1) defendant's stated reason for the adverse employment action is false; (2) defendant acted contrary to a written policy; or (3) defendant acted contrary to an unwritten policy or practice." *Wagoner v. Pfizer, Inc.*, No. 09-3066, 391 Fed. Appx. 701, 707 (10th Cir. Aug. 12, 2010) (unpublished) (citing *Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000)).

In determining whether a defendant's proffered reason for termination is pretext, the Court examines the facts as they appear to the person making the employment decision, not the aggrieved employee. *Wagoner* 391 Fed. Appx. at 707; *Piercy v. Maketa*, 480 F.3d 1192, 1199-1200 (10th Cir. 2007) (internal citations omitted). Therefore, the relevant inquiry is not whether Plaintiff has established a genuine dispute of material fact as to whether she actually submitted fraudulent travel reimbursement

requests. *Wagoner*, 391 Fed. Appx. at 710 (asking not whether the employer's reasons were wise, fair, or correct). Rather, the question before the Court is whether Plaintiff has offered any evidence that Ms. Cooper did not honestly, in good faith believe that Plaintiff had committed fraud or that Ms. Cooper terminated Plaintiff for retaliatory reasons. *Id.* (asking whether defendant honestly believed the reasons for termination and acted in good faith) (citing *Rivera v. City and County of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004)). "Even a mistaken belief can be a legitimate, non-pretextual reason for an employment decision." *Piercy*, 480 F.3d at 1200 (citing *EEOC v. Flasher Co.*, 986 F.2d 1312, 1322 n.12 (10th Cir. 1992)).

In support of her claim that Defendants' proffered reason for termination was pretextual, Plaintiff testifies that she did not commit fraud, but had used the state car and her personal car for job purposes at different times during the same day. (Doc. 65-2 at 1-2:6-7). As discussed above, Plaintiff claims that she had not committed fraud, and that the reason for her termination was false, which is an appropriate way to demonstrate pretext. However, rather than establishing that she had not engaged in fraudulent conduct, Plaintiff must establish that Ms. Cooper could not have believed in good faith that she committed fraud. *See Wagoner*, 391 Fed. Appx. at 710. In her affidavit, Ms. Cooper states that she based her decision to terminate Plaintiff on documentation that Plaintiff had submitted fraudulent travel reimbursement requests.[3]

---

[3] In her Response, Plaintiff contends that the affidavit of Jacqueline Cooper is not evidence under FED. R. CIV. P. 56(e) because it is not signed or notarized, and therefore should not be considered with the Motion. (Doc. 65 at 14-15); *See Flemming v. Corr. Corp. of Am.*, No. 04-6312, 143 Fed. Appx. 921, 925 (10th Cir. July 22, 2005) (unpublished). In their Reply, Defendants explain that the verification had not been affixed to the affidavit in the Motion, and attach an identical affidavit that has been notarized and signed by Ms. Cooper. (Doc. 72 at 1-2; Doc. 72-1).
  Although FED. R. CIV. P. 6(c)(2) requires a properly executed affidavit to be served with the motion it is intended to support, "a court 'clearly has discretion to permit supplemental affidavits it finds useful for summary judgment determination.'" *Allen v. Figuera*, No. 10-1162, 416 Fed. Appx. 771, 774 (10th Cir.

(Doc. 72-1 at 3). In addition, Ms. Crook, Plaintiff's direct supervisor, testified that she had found documentary evidence that Plaintiff had committed fraud, which she provided to Ms. Cooper. (Doc. 58-2 at 4-5). Defendants have also provided emails between Ms. Cooper and Mr. Stapleton, Mr. Hatfield, Ms. Crook, and Ms. Salazar, discussing the documentation of Plaintiff committing fraud. (Doc. 58-16). In light of this, Plaintiff's testimony that she had not committed fraud, does not necessarily suggest that Ms. Cooper acted with a retaliatory motive.

Further, the fact that Plaintiff was the only employee being investigated does not render the proffered reason for terminating her false. *Wagoner.* 391 Fed. Appx. at 708. Regardless of the reason for initially investigating Plaintiff's travel expenses, that reason was not the basis of her termination. Rather, she was terminated based on documentation that she had committed fraud. *Id.* at 709.

Plaintiff's only allegations that could support an argument that Ms. Cooper did not act in good faith, or did not honestly believe that Plaintiff had committed fraud, are that it took four months for Plaintiff to be terminated, (Doc. 65 at 19; Doc 65-2 at 2:10), and that Ms. Cooper simply rubberstamped the investigation of Plaintiff's travel logs, rather than investigating herself. (Doc. 65 at 19; Doc. 65-4 at 8:40). Still, Plaintiff has not provided any evidence that the process by which she was terminated was against a written or unwritten policy, or in any way out of the ordinary. Again, given that Ms. Cooper was informed by various human resources personnel and provided documentation that Plaintiff had submitted fraudulent travel reimbursements, these facts

---

March 23, 2011) (unpublished) (citing *Lighton v. University of Utah*, 209 F.3d 1213, 1227 (10th Cir. 2000)). Here, given that the supplemental affidavit is identical to the original, and Plaintiff does not otherwise argue that she would be prejudiced by a supplemental affidavit, the Court accepts the supplemental affidavit attached to Defendants' Reply.

are not enough to create a genuine dispute of material fact as to Ms. Cooper's honest belief that Plaintiff had committed fraud and needed to be terminated. *See Ford v. West*, 222 F.3d 767, 777 (10th Cir. 2000) ("Vague, conclusory statements do not suffice to create a genuine issue of material fact."); *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988) (stating that "mere conjecture" of pretext is an insufficient basis for denial of summary judgment). Indeed, these assertions alone do not suggest a retaliatory motive.

Therefore, Plaintiff has not met her burden of establishing a genuine issue of material fact as to whether Defendants' proffered reason for terminating her was pretextual. Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiff's claim of retaliation under Title VII.

B. *Count III - New Mexico Whistleblower Protection Act*

Defendants argue that they are entitled to judgment on Plaintiff's claim under the NMWPA because Plaintiff cannot show that Defendants' proffered reason for her termination was pretextual. (Doc. 59 at 2). Defendants contend that Plaintiff was terminated on the ground that she had committed fraud in contravention of office policy, not for any whistleblowing activities. (*Id*).

Plaintiff maintains that she has established a *prima facie* case for her claim under the NMWPA. (Doc. 65 at 15-20; Doc. 66 at 5-7). In addition, she argues that she has provided sufficient evidence to create a genuine dispute of material fact as to whether her termination for alleged fraud was pretextual. (Doc. 65 at 17-20; Doc. 66 at 5-7).

Under the NMWPA, it is unlawful for a public employer to take "any retaliatory

action against a public employee because the public employee: (1) communicates to the public employer…information about an action or failure to act that the public employee believes in good faith constitutes an unlawful or improper act; (2) provides information to, or testifies before, a public body as part of an investigation…into an unlawful or improper act; or (3) objects to or refuses to participate in an activity, policy, or practice that constitutes an unlawful or improper act." N.M. STAT. § 10-16C-3. It is an affirmative defense to any claim brought under the NMWPA "that the action taken by a public employer was due to the employee's misconduct…or other legitimate business purpose unrelated to conduct prohibited [under] the [NMWPA] and that retaliatory action was not a motivating factor." N.M. STAT. § 10-16C-4.

Defendants argue that this Court should apply the *McDonnell* burden-shifting framework to Plaintiff's claim under the NMWPA. (Doc. 59 at 3-4). Defendants contend that, because the New Mexico Supreme Court has adopted the *McDonnell* framework to analyze a claim of discrimination under the NMHRA, the same analytical framework should be applied to claims under the NMWPA. (*Id*). Defendants claim that the burden-shifting framework is appropriate for evaluating whether Plaintiff has alleged sufficient facts to support an inference of retaliation for whistleblowing, given that there is significant overlap between her discrimination, retaliation, and whistleblowing claims. (Doc. 59 at 4).

Plaintiff does not address this argument in her Response. (Doc. 66). However, Plaintiff makes her argument according to the *McDonnell* framework and uses the same evidence from her Title VII claim. (*Id*). She argues that she has produced evidence of a

18

causal connection between her whistleblowing activities and her termination, and has raised an inference of pretext for her termination. (Doc. 66 at 5-7).

Plaintiff states that she reported a co-worker who was stealing funds to the District Deputy Defender. (Doc. 66 at 2; Doc 66-1 at 3:91). Plaintiff also disclosed to Ms. Cooper, the New Mexico Public Defender, rumors that the District Deputy Defender and the same co-worker who had been stealing funds were having an affair. (Doc. 66 at 2; Doc. 66-1 at 4-5:97-98). Plaintiff argues that soon after these reports, she was given her first letter of reprimand and her travel expenses were investigated for fraud. (Doc. 66 at 5-6). She again maintains that her termination for alleged fraud was pretextual. To support her claim she uses the same evidence presented in connection with her Title VII claim, including the temporal proximity between her whistleblowing activities, her letters of reprimand, and investigation of fraud, the fact that she was only employee whose travel logs were investigated, and that she had not, in fact, committed fraud. (Doc. 66 at 6-7).

Defendants do not dispute that Plaintiff's reports were whistleblowing activities. (Doc. 73 at 2). Defendants maintain that Plaintiff cannot establish a causal connection between those activities and her termination for fraud or that she has created an inference of pretext. (Doc. 73 at 2-3). Defendants again argue that the investigation was prompted by a statewide review of travel expenses, and that documentation indicated Plaintiff had used a state gas card on the same date and at the same time that she requested a travel reimbursement. (Doc. 73 at 3).

Indeed, the arguments in support of and against Plaintiff's claim under the NMWPA are identical to those under Title VII. As discussed above, those arguments

are insufficient to raise a genuine dispute of material fact as to whether Plaintiff was terminated for any reason other than submitting fraudulent travel reimbursements. Accordingly, they fall short in the context of her NMWPA claim as well. *See Lobato v. New Mexico Environment Dep't.*, 733 F.3d 1283, 1297 (10th Cir. 2013) (holding that unsuccessful arguments made under Title VII were also unsuccessful under NMWPA). Therefore, Defendants are entitled to judgment as a matter of law as to Plaintiff's claim under the NMWPA.

## IV.    Conclusion

For the reasons outlined above, the Court finds that Plaintiff has not created a genuine dispute of material fact as to whether she was terminated for a reason other than allegedly submitting fraudulent reimbursement requests. Therefore, the Court finds that Defendants are entitled to summary judgment on all of Plaintiff's claims as a matter of law.

**IT IS HEREBY ORDERED** that *Defendants' Motion for Summary Judgment on Plaintiff's Complaint of Retaliation Under Title VII*, (Doc. 58), and *Defendants' Motion for Summary Judgment on Plaintiff's Complaint Under the New Mexico Whistleblower Protection Act*, (Doc. 59), be **GRANTED**, and this action dismissed with prejudice.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE